UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIA DOLORES GARCIA<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | No. 2:18-cv-01028-KJN<br><br>ORDER ON PARTIES' CROSS MOTIONS FOR SUMMARY JUDGMENT<br><br>(ECF Nos. 13, 16) |

Plaintiff seeks judicial review of a final decision by the Commissioner of Social Security denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act.[1] In her summary judgment motion, Plaintiff contends the Administrative Law Judge ("ALJ") who issued the written decision erred by discrediting the opinions of two consultative examining psychiatrists without providing specific and legitimate reasons for doing so. Plaintiff argues the error was not harmless. The Commissioner opposed and filed a cross-motion for summary judgment.

After considering the parties' written briefing, the record, and the applicable law, the Court DENIES Plaintiff's motion for summary judgment, GRANTS the Commissioner's cross-

---

[1] This action was referred to the undersigned pursuant to Local Rule 302(c)(15), and both parties voluntarily consented to proceed before a United States Magistrate Judge for all purposes. (ECF Nos. 6, 7.)

1

motion for summary judgment, and AFFIRMS the final decision of the Commissioner.

## I. BACKGROUND

Plaintiff was born on April 5, 1963, has a high school education, and can read, speak, and understand English. (Administrative Transcript ("AT") 2135, 1073, 563.) She has not worked since November 12, 2013, when she ended her eight-year career as a data entry clerk. (AT 2122.) On November 15, 2013, Plaintiff applied for DIB, contending she was disabled due to, among other things, memory loss, bone disease, fibromyalgia, disc disease, numbness in the leg, and chronic pain. (AT 38, 564.) Plaintiff's application was denied in April 2014, and again upon reconsideration on July 17, 2014. (AT 412, 446.)

Plaintiff, aided by an attorney, sought review of these denials with an ALJ. (AT 38.) At both the October 20, 2015 and May 10, 2016 hearings, Plaintiff testified as to her conditions; at the second hearing, the ALJ heard testimony from a vocational expert ("VE") as to Plaintiff's ability to perform certain work. (Id.) On July 5, 2016, the ALJ issued a decision determining that Plaintiff was not disabled from her onset date through the present. (AT 38.) The ALJ found, among other things, that Plaintiff's mental impairments limited her to "simple, routine, and repetitive tasks . . . occasional changes in the work setting and occasional interaction with supervisors." (AT 43.) The ALJ reached this conclusion by comparing Plaintiff's mental impairments to the listings, as well as by considering the medical evidence in the record—including the 2014 and 2015 reports of Dr. Richwerger and Dr. Kalman, two examining psychiatrists. (AT 42–43.)

On March 23, 2018, the Appeals Council denied Plaintiff's request for review. (AT 1–6.) Plaintiff then filed this action within sixty days requesting judicial review of the Commissioner's final decision; the parties filed cross–motions for summary judgment. (ECF Nos. 1, 13, 16, 17.)

## II. LEGAL STANDARD

The Court reviews the Commissioner's decision de novo, and should reverse "only if the ALJ's decision was not supported by substantial evidence in the record as a whole or if the ALJ applied the wrong legal standard." Buck v. Berryhill, 869 F. 3d 1040, 1048 (9th Cir. 2017). Substantial evidence is more than a mere scintilla, but less than a preponderance; i.e. "such

2

relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Edlund v. Massanari, 253 F. 3d 1152, 1156 (9th Cir. 2001). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Id. "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F. 3d 1035, 1038 (9th Cir. 2008).

### III. SUMMARY OF THE ALJ'S FINDINGS (FIVE–STEP ANALYSIS)[2]

As an initial matter, the ALJ determined that Plaintiff met the insured status requirements of the Act for purposes of DIB through December 31, 2018. (AT 40.) At the first step, the ALJ concluded that Plaintiff had not engaged in substantial gainful activity since November 12, 2013, Plaintiff's alleged disability onset date. (Id.) At step two, the ALJ found that Plaintiff had the following severe impairments: Cervical Spine Degenerative Disc Disease, Thoracic Spine Degenerative Disc Disease, Right Shoulder Impairment, Cognitive Disorder, Affective Disorder, Fibromyalgia, and Obesity. (AT 40.) At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Appendix 1"). (AT 41.) In reaching this conclusion, the ALJ considered Plaintiff's medical records and the opinions of

---

[2] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program. 42 U.S.C. §§ 401 et seq. Disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. § 423(d)(1)(a). A parallel five-step sequential evaluation governs eligibility for benefits. See 20 C.F.R. §§ 404.1520, 404.1571—76; Bowen v. Yuckert, 482 U.S. 137, 140—42 (1987). The following summarizes the sequential evaluation:

**Step one**: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
**Step two**: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
**Step three**: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
**Step four**: Is the claimant capable of performing her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
**Step five**: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995). The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

multiple examining physicians. (AT 41–43.) The ALJ specifically referenced the opinions of Dr. Richwerger and Dr. Kalman, two state consultative examining psychiatrists. As discussed more fully below, the ALJ accorded "great weight" to Dr. Richwerger's opinion and "[r]educed weight" to Dr. Kalman's opinion. (AT 41–42.)

The ALJ found Plaintiff had the residual functional capacity to perform light work:

> . . . except the claimant is limited to lifting-carrying 20 pounds occasionally and 10 pounds frequently; is limited to sitting six hours and standing-walking six hours in an eight-hour workday; requires use of a cane; is limited to frequently pushing-pulling with the upper extremities; is limited to frequent foot control operation with the left and right feet; is limited to occasionally crawling, and climbing ladders, ropes, and scaffolds; is limited to frequent balancing, stooping, crouching, kneeling, and climbing ramps or stairs; is limited to frequently overhead reaching; is limited to frequent handling with the right hand; is limited to frequent fingering with the right hand; must avoid concentration exposure to cold and excessive vibrations; must avoid moderate exposure to hazards and unprotected heights; is limited to simple, routine, and repetitive tasks; is limited to occasional changes in the work setting; and is limited to occasional interaction with supervisors.

(AT 43.) At step four, the ALJ determined that Plaintiff was unable to perform any past relevant work. (AT 47.) However, at step five, the ALJ found that, in light of Plaintiff's age, education, work experience, and RFC, and based on the VE's testimony, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. (AT 47–48.) Thus, the ALJ concluded that Plaintiff had not been under a disability, as defined in the Act, from Plaintiff's alleged disability onset date (November 12, 2013) through the date of the ALJ's decision (July 5, 2016). (AT 48.)

## IV. ISSUES PRESENTED

Plaintiff contends the ALJ's decision, as detailed above, is not supported by substantial evidence.[3] Specifically, Plaintiff argues the ALJ erroneously discounted: (A) the opinion of Dr. Kalman, a psychiatrist who examined Plaintiff in December 2015—who opined that Plaintiff would have extreme limitations in remembering complex instructions and making judgments on complex work, and had a moderately impaired ability to interact with supervisors; and (B) a

---

[3] On appeal, Plaintiff does not challenge the ALJ's evaluation of the evidence that relates to Plaintiff's physical limitations. Plaintiff's briefing focuses solely on the ALJ's evaluation of the evidence concerning Plaintiff's mental limitations.

4

finding made by Dr. Richwerger, a psychiatrist who examined Plaintiff in February 2014—that Plaintiff had a moderate impairment in her ability to complete a normal workday and work week without interruption from a psychiatric condition.

The Commissioner argues the ALJ sufficiently articulated his reasons for discounting these opinions, and so the decision should be affirmed.

## V. **DISCUSSION**

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. Holohan v. Massanari, 246 F. 3d 1195, 1201—02 (9th Cir. 2001); Lester v. Chater, 81 F. 3d 821, 830 (9th Cir. 1995). Generally speaking, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion carries more weight than a non-examining physician's opinion. Holohan, 246 F. 3d at 1202.

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the Court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. A contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons. Lester, 81 F. 3d at 830–31. An ALJ provides specific and legitimate reasons by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [an] interpretation thereof, and making findings." Magallanes v. Bowen, 881 F. 2d 747, 751 (9th Cir. 1989) (citation omitted); see also Morgan v. Commissioner of Social Security, 169 F. 3d 595, 601–02 (9th Cir. 1999) (ALJ gave specific and legitimate reasons for rejecting opinions that claimant could not work on sustained basis or cope with social aspects of daily living by detailing evidence in the record suggesting that claimant maintained his hygiene, was cooperative, and had friends).

**A. The ALJ properly weighed the evidence in discounting the opinion of Dr. Kalman.**

Plaintiff contends that the ALJ failed to provide specific and legitimate reasons for discounting the opinion of Dr. Kalman, a consultative examining psychiatrist, regarding Plaintiff's ability to work. (ECF No. 13 at p. 17.) During Dr. Kalman's examination on December 4, 2015, Plaintiff reported feelings of "hopelessness" and "worthlessness" due to the

5

physical limitations caused by her illness; however, Dr. Kalman noted that Plaintiff was generally "cooperative," "oriented to person, place, date and situation," could perform basic arithmetic, and exhibited "fair" judgment and "logical and goal directed" thought. (AT 2121–22.) Further, her mood appeared stable and she did not present signs of hallucinations or delusions. (AT 2123.) Dr. Kalman also noted that Plaintiff had friends, got along with her family, and could groom herself. (AT 2123.) However, when Dr. Kalman tested Plaintiff's intellectual functioning, Plaintiff provided delayed responses to questions, "appeared confused," exhibited memory and recall issues, and was found to have "below average" intelligence. (AT 2122–23.) Ultimately, Dr. Kalman concluded that Plaintiff could not interact with colleagues or the public, "understand, remember and carry out" basic job instructions, "maintain attention, concentration and memory," or cope with work-associated stress. (AT 2124.) The ALJ, in reaching his decision, accepted Dr. Kalman's observations that Plaintiff had "logical and goal directed thoughts" and did not experience hallucinations. (AT 41.) However, he assigned reduced weight to Dr. Kalman's ultimate conclusion concerning Plaintiff's work capacity because it was inconsistent with the remaining medical evidence. (AT 42.)

The Court finds that the ALJ gave specific and legitimate reasons for assigning reduced weight to Dr. Kalman's opinion by (1) thoroughly summarizing the medical evidence; and (2) explaining his interpretation of that evidence. Magallanes, 881 F. 2d at 751; see also Lester, 81 F. 3d at 830–31. The ALJ satisfied the first Magallanes requirement of "setting out a detailed and thorough summary of the facts" by summarizing Plaintiff's health visits and notes taken by various examiners as to her mental condition. Magallanes, 881 F. 2d at 751; (see generally AT 42 [ALJ decision], citing AT 595 [social security function report], 1083 [opinion of Dr. Ali, examining physician], 2136 [opinion of Dr. Wagner, examining physician].)

The ALJ satisfied the second Magallanes requirement that he state his interpretation of the facts by noting and resolving conflicts in the record. See Magallanes, 881 F. 2d at 751, 753-54 (finding ALJ properly rejected examining opinion finding earlier disability onset date by pointing to other opinions in the record that indicated later disability onset date). He did this in part by detailing each condition listed in Appendix 1 and citing specific evidence to explain his

conclusion as to those conditions. (AT 42–43); see also Morgan, 169 F. 3d at 601-02 (ALJ provided specific and legitimate reasons for rejecting treating physician's findings of marked limitations in Appendix 1 categories by pointing to evidence in the record suggesting milder impairment). As discussed below, the ALJ reasonably found that the medical evidence conflicts with Dr. Kalman's conclusion that Plaintiff could not interact with colleagues or the public, "understand, remember and carry out" basic job instructions, or "maintain attention, concentration and memory." (AT 2124.)

When reviewing the record, the ALJ relied heavily on the findings of Dr. Richwerger, a consultative examining psychiatrist who determined that Plaintiff had a "mild neurocognitive disorder," but opined that the disorder "could be secondary to fibromyalgia and medication side effects." (AT 41, citing AT 1076.) Dr. Richwerger also determined that Plaintiff had an IQ of 67, and further diagnosed her with depression, observing that she "appears mildly anxious and somewhat dysphoric at times." (AT 41, citing AT 1074, 1076.) However, Dr. Richwerger noted that Plaintiff previously got along with her colleagues and could understand instructions for simple tasks "within normal limits." (AT 40.) He further found that Plaintiff's "thought processes were . . . clear and rational." (AT 1074.) Dr. Richwerger ultimately concluded that Plaintiff was moderately impaired in her "ability to perform detailed and complex tasks . . . [and] complete a normal workday or workweek without interruption from a psychiatric condition," and mildly impaired "in her ability to perform work activities on a consistent basis . . . understand and accept instructions from supervisors," and cope with typical "stresses encountered in competitive work." (AT 41, citing 1074; AT 42, citing 1077.) In assigning reduced weight to Dr. Kalman's conclusion regarding Plaintiff's severe mental impairments, the ALJ cited Dr. Richwerger's contradictory observation that Plaintiff's "thought processes were . . . clear and rational." (AT 42, citing 1074.) Andrews v. Shalala, 53 F. 3d 1035, 1042-43 (9th Cir. 1995) (upholding ALJ's rejection of examining psychologist's opinion where there was "legitimate conflicting testimony" in the record, and ALJ pointed to other medical opinions that conflicted with examining opinion).

The ALJ also employed Appendix 1 criteria to identify and resolve conflicts in the record. Paragraph B of Appendix 1 lists four conditions used to determine whether a claimant's mental

7

impairment meets the required level of severity to receive DIB. These conditions are very similar to those evaluated by Dr. Kalman.[4] Under Appendix 1, an applicant's mental condition must cause two of the following impairments:

1. Marked restriction of activities of daily living; or
2. Marked difficulties in maintaining social functioning; or
3. Marked difficulties in maintaining concentration, persistence, or pace; or
4. Repeated episodes of decompensation, each of extended duration.

20 C.F.R. Part 404, Subpart P, Appendix 1. "Marked" is more severe than mild or moderate, and means that a claimant's ability to function in a given area "independently, appropriately, effectively, and on a sustained basis is seriously limited." Id. Here, the ALJ first noted that two state medical consultants, Dr. Ochitill and Dr. Hamersma, reviewed Plaintiff's records and found her to have mild restrictions in activities of daily living and social functioning, moderate restrictions in concentration persistence or pace, and no episodes of decompensation. (AT 41–42.)

First, the ALJ concluded that Plaintiff has "mild restrictions" in activities of daily living, specifically referencing portions of the record indicating that Plaintiff could maintain her own personal care, perform chores around the house, and shop. (AT 42 [ALJ decision], citing AT 595 [social security function report], 1083 [opinion of Dr. Ali, examining physician], 2136 [opinion of Dr. Wagner, examining physician].) Notably, the ALJ relied on the opinion of Dr. Wagner, who examined Plaintiff on December 3, 2015—one day before Dr. Kalman's examination. (AT 2136, 2121.) Dr. Wagner noted that Plaintiff "shops and performs her own activities of daily living without assistance." (AT 42, citing AT 2136.) This finding reasonably conflicts with Dr. Kalman's notes taken the very next day, which conveyed that Plaintiff could not cook, shop, or perform chores around the house. (AT 2123.) Next, the ALJ found that Plaintiff had "mild difficulties" with social functioning, noting that her ability to go shopping "would indicate she can go out in public." The Court agrees that Plaintiff's ability to go shopping reasonably

---

[4] Dr. Kalman opined as to Plaintiff's ability to interact with colleagues or the public, to understand, remember and carry out basic job instructions, or to maintain attention, concentration and memory. (AT 2124.)

8

contradicts a complete inability to interact with the public. (AT 2124.) The fact that Plaintiff has friends and previously got along with coworkers also supports the ALJ's conclusion. (AT 41.) Regarding concentration, persistence, or pace, the ALJ found moderate difficulties, noting that Plaintiff's ability to do household work "indicates an ability to do at least simple tasks," and that she could understand instructions required to complete such tasks. (AT 42.) The Court finds that Plaintiff's capacity to perform housework reasonably contradicts a complete inability to "maintain attention, concentration and memory" because performing housework requires a certain capacity to perform and concentrate on a given task. (Id.; AT 2124); See Morgan, 169 F. 3d at 601–02 (ALJ gave specific and legitimate reasons for rejecting opinions that claimant could not (1) work on sustained basis or (2) cope with social aspects of daily living by detailing other evidence in the record suggesting that Plaintiff maintained his hygiene, was cooperative, and had friends). Finally, the ALJ considered decompensation, i.e., "exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning," which can be indicated by "records showing alteration in medication, or documentation of the need for a more structured psychological support system." He concluded that the record revealed no episodes of decompensation. (AT 42–43.) Finding no marked limitations in any of the aforementioned categories, the ALJ concluded that Plaintiff's mental impairments did not meet the requisite level of severity to constitute a disability. (AT 43); see Morgan, 169 F. 3d at 601-02.

The Court notes that, where a claimant's condition is "progressively deteriorating, the most recent medical report is the most probative." Stone v. Heckler, 761 F. 2d 530, 532 (9th Cir. 1985) (remanding because ALJ rejected latest medical opinion, where claimant suffered from disease causing "progressive destruction of the weight-bearing joints in the lower extremities" and record showed "continuing degenerative changes in the joints in" claimant's foot). However, the record regarding this deterioration must be clear. See Young v. Heckler, 803 F. 2d 963, 968 (9th Cir. 1986) (rejecting claimant's argument that ALJ should have heavily weighed most recent opinion, where the record did not clearly reflect that claimant's condition was deteriorating). Here, Plaintiff speaks generally of her "definite decline in mid-2014 through 2015." (ECF No. 13 at p. 22.) Yet, the record does not clearly reflect such a decline. For instance, Dr. Kalman

himself found Plaintiff "cooperative," "orientated to person, place, date and situation," capable of performing basic arithmetic, and being of "fair" judgment and "logical and goal directed" thought." (AT 2121-22.) He further found her to have a stable mood, free of hallucinations or delusions. (Id.) Moreover, Dr. Wagner, who provided the second most recent medical opinion—having examined Plaintiff one day prior to Dr. Kalman—found that she "shops and performs her own activities of daily living without assistance." (AT 2136.) Dr. Richwerger noted that Plaintiff previously got along with her colleagues, could understand instructions for simple tasks, and had "clear and rational" thought processes. (AT 1074.) As discussed above, the remainder of the record similarly fails to clearly show definitive cognitive decline, and indicates that, reading the record as a whole, Dr. Kalman's opinion was the true outlier. Therefore, the ALJ was under no obligation to assign Dr. Kalman's opinion more probative weight than other evidence in the record.

In sum, it is the ALJ who "is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund, 253 F. 3d at 1156 (citation omitted). Moreover, even "when the evidence is susceptible to more than one rational interpretation, the ALJ's conclusion must be upheld." Morgan, 169 F. 3d at 601. Here, the ALJ adequately showed that Dr. Kalman's opinion—which suggested much higher limitations in areas comparable to the Appendix 1 categories—was inconsistent with the remainder of the record. The ALJ provided specific and legitimate reasons for according reduced weight to Dr. Kalman's opinion by detailing the Appendix 1 requirements, the medical records and opinions of the reporting physicians, and by explaining his interpretation of their applicability to Plaintiff. Magallanes, 881 F. 2d at 751. This meets the substantial evidence standard, and so the Court concludes the ALJ did not err regarding Dr. Kalman's opinion. Buck, 869 F. 3d at 1048.

**B. The ALJ did not erroneously discount the opinion of Dr. Richwerger.**

Plaintiff also argues that the ALJ improperly rejected a portion of Dr. Richwerger's examining opinion concerning Plaintiff's ability to complete a workday/week without interruption. (ECF No. 13 at pp. 13, 18.) Similar to the Court's findings on Dr. Kalman, it is clear the ALJ was within his authority to resolve this apparent inconsistency, and the record as a

whole supports the ALJ's findings.

When discussing Dr. Richwerger's opinion, the ALJ summarized the psychiatrist's various conclusions, including the finding that Plaintiff had "moderate impairments . . . in her ability to complete a normal workday and work week without interruption from a psychiatric condition." (AT 42.) The ALJ specifically referenced this finding in his decision, and accorded the opinion as a whole "great weight." (AT 42.) Even if the ALJ did specifically reject this finding, he was not required to accept each of Dr. Richwerger's conclusions to "hold that his [opinion] contains substantial evidence." Magallanes, 881 F. 2d at 753 ("It is not necessary to agree with everything an expert witness says in order to hold that his testimony contains substantial evidence.") (quoting Russell v. Bowen, 856 F. 2d 81, 83 (9th Cir. 1988)). Rather, the ALJ weighed Dr. Richwerger's conclusions with the evidence as a whole, accepting those that were consistent with the record. Howland v. Commissioner of Social Security, No. 2:15-cv-1079-KJN, 2017 WL 132108, at *5 (E.D. Cal. 2017) (finding that ALJ did not reject opinion of expert by failing to "adopt wholesale" each of his conclusions, but rather weighed them "in the context of [the] evidence as a whole").

Accordingly, the Court finds that the ALJ did not err regarding Dr. Richwerger's opinion.

**V.     CONCLUSION**

In sum, the Court finds that the ALJ's decision was free from prejudicial legal error and supported by substantial evidence in the record as a whole. Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 13) is DENIED;
2. The Commissioner's cross-motion for summary judgment (ECF No. 16) is GRANTED;
3. The final decision of the Commissioner is AFFIRMED, and judgment is entered for the Commissioner; and

////

////

////

4. The Clerk of Court shall close this case.

IT IS SO ORDERED.

Dated: September 13, 2019

_Kendall J. Newman_
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

garc.1028

12